## CONSTRUCTION OF THE EMERGENCY STATUTE RELATING TO ISSUES OF BONDS.

Common Pleas Court of Licking County.

J. C. STINSON v. THE BOARD OF EDUCATION OF BURLINGTON
TOWNSHIP, ETC.

Decided, Steptember Term, 1922.

*Schools—Order from Department of Domestic Relations for Relief of
Congestion in School Building—Is not Authority for Issue of Bonds
Under the Emergency Statute for a new Building—Contingencies
Contemplated by the Emergency Statute.*

The state department of domestic relations issued to the board of ed-
ucation of Burlington township, Licking county, the following
prohibition:

"On account of congested attendance, and it being necessary to
use basement rooms for school purposes to relieve the congested
condition, the present building is inadequate and does not meet
the code requirement; therefore, provide additional rooms by en-
larging present building, or construct new building to afford
relief to present congestion."

*Held*:   That this order does not create such a contingency as to auth-
orize an issue of bonds under the emergnecy statute (Section
7630-1) for erection of a new school house. The prayer of the
petition for an injunction on the ground that the amount pro-
posed is grossly excessive and would be an abuse of discretion on
the part of the board of education is therefore denied, and an or-
der is made by the court enjoining any issue of bonds under said
emergency statute.

*Fitzgibbon, Montgomery & Black,* for plaintiffs.

*Flory & Flory,* and *Russell Knepper,* for defendants.

MOORE, J. (Orally).

In this action the plaintiffs, as taxpayers, seek to enjoin the
board of education of Burlington township from issuing bonds
in the sum of $80,000, the proceeds of which are to be used for
the erection of a school building in said township.

The petition alleges, and the answer admits, that the question
of issuing bonds in the sum of $77,000 for the purpose of erect-
ing a school house was submitted to the electors of the township,

and on June 3, 1922, was defeated. Thereupon the board attempted to and was proceeding to issue bonds in the sum of $80,000, when a temporary injunction was issued by this court against the board.

The board claimed to be acting under the authority of Section 7630-1 of the General Code of Ohio.

It is contended by the plaintiffs that this contemplated bond issue is:

1. Without any authority of law.

2. That if the board has authority to proceed under Section 7630-1 of the General Code, a bond issue in the sum of $80,000 is grossly excessive, a much larger amount than the needs and requirements of Burlington township for school purposes justify, and that an issue in such an amount would constitute an abuse of discretion, such as to warrant the remedy of injunction.

Has the board of education authority to issue said bonds under Section 7630-1 of the General Code?

This section was amended, to take effect January 1, 1922, and reads as follows:

"If a school house is wholly or partly destroyed by fire, or other casualty, or if the use of any school house or school houses for their intended purpose is prohibited by an order of the industrial commission of Ohio, or its successor in such authority, and the board of education of the school district is without sufficient funds applicable to the purpose with which to rebuild or repair such school house, or to construct a new school for the proper accommodation of the schools of the district, and it is not practicable to secure such funds under any of the six preceding sections, because of the limit of taxation applicable to such school district, such board of education may issue bonds for the amount required for such purpose. For the payment of the principal and interest on such bonds, and on bonds heretofore issued for the purpose herein mentioned, and to provide a sinking fund for their final redemption at maturity, such board of education shall annually levy a tax as provided by law."

This statute is obviously intended as an emergency statute. Under usual or ordinary conditions, boards of education are required by the Legislature to issue bonds under other provisions of the Code. An emergency implies conditions which could not

reasonably have been foreseen and provided for by ordinary means. To avail itself of the provisions of this statute, it follows that the board must show a contingency, or contingencies, such as clearly empower it to act under the extraordinary powers thus granted by the Legislature.

What are the contingencies?

1. If a school house is wholly or partly destroyed by fire or other casualty.

2. If the use of any school house or school houses for their intended purpose is prohibited by an order of the industrial commission of Ohio, or its successor in authority. If either of these contingencies occur, and the board is without funds which are applicable to the purpose; and further, if it is not practicable to secure such funds by other methods prescribed by statute, then the board may invoke the provisions of this emergency statute and rebuild, repair or construct a new school house.

Have the contingencies occurred in Burlington township such as to bring the board within the provisions of this statute?

No claim is made by anyone that any school house in Burlington township has been wholly or partly destroyed by fire or by any other casualty, which disposes of the first contingency.

On May 13, 1922, the successor to the industrial commission of Ohio, the department of industrial relations of Ohio, division of workshops and factories and public buildings, issued the following order to the board of education of Burlington township:

"On account of congested attendance, and it being necessary to use basement rooms for school purposes to relieve the congested condition, the present building is inadequate and does not meet the Code requirement; therefore, provide additional rooms by enlarging present building, or construct new building to afford relief to present congestion."

Does this order prohibit the use of any school house or school houses in Burlington township for their intended purpose?

This order is an order to provide additional room by enlargeing present building, or construct a new building. It is not an order prohibiting anything. Whatever powers the Legislature may have vested in the department of industrial relations

to order new school buildings constructed, or buildings en-larged, it did not provide that if such department ordered a board of education to construct a new building, or enlarge a building, the board of education thereby became vested with power to issue bonds under the provisions of Section 7630-1. The board becomes vested with this power if the use of a school house is prohibited by the order. If the department is vested with the power to order a new school building, or to order a building enlarged, the Legislature must have intended that a board of education should comply with such order under pro-visions of the statute other than those contained in Section 7630-1, because in this statute no provision is made for the exercise of authority to issue bonds without a vote of the elec-tors, simply upon the order of the department to build a new school house, or enlarge a building.

The board of education derives its powers not from any order or orders commanding a new building, or the enlargement of a building, but from an order of prohibition in respect to a building already in use. Such is the plain reading of the stat-ute, as the court reads it.

This court is forced to the conclusion that the order made by the department of industrial relations is not such an order as is contemplated by Section 7630-1, and is not such an order as can be made the basis for the Burlington township board to issue bonds in any amount whatever under the authority of said section. If the department of industrial relations should issue an order prohibiting the use of the school house, then the question of the discretion of the board in issuing bonds in any specific amount it determined might arise.

The authorities cited are conclusive upon the proposition that whenever contingencies occur that give a board of education power under Section 7630-1 to issue bonds, the board is vested with the discretion as to whether it shall rebuild, repair, or con-struct a new school house. It may do any one of these three things, and if it determines to do any one of the three, it is only prohibited by the courts from an abuse of discretion in the exercise of the authority vested in it for doing any one of the three things. But in the case at bar, the court takes the

view that it is not necessary to determine whether or not there is an abuse of discretion on the part of the board of education. It has no power to issue any bonds under Section 7630-1, until the contingency or contingencies occur which will constitute the basis for a bond issue.

It follows that this court cannot make an order enjoining this bond issue above a certain amount, as prayed for in the petition. In the view that the court takes of it, the proper basis has not been laid upon which to base a bond issue under Section 7630-1. If the board proceeds under this section, the order must be, and is, to perpetually enjoin the issue of any bonds whatever under Section 7630-1, unless some one of the contingencies provided by the statute occurs in the future; that is, that the building is destroyed by fire, or other casualty, or that the industrial commission issues an order prohibiting the use of the school building, or of some school building in Burlington township.

The appeal bond may be fixed at $200.

---

### DESCENT OF MONEY DEPOSITED IN RAILWAY SAVINGS DEPARTMENT.

Common Pleas Court of Crawford County.

SAMUEL BURKE ET AL V. NICHOLAS WALTBILLIG, ADMINISTRATOR, ETC., ET AL.

Decided, August 17, 1922.

*Gift—Descent of Personal Property—Section 8577, General Code.*

Money earned by an employee of the Pennsylvania Railway Company and deposited with savings department of such railway company payable to the wife of such employee at his death, is a gift within the meaning of Section 8577, G. C., and at the death of the wife, without issue and intestate, such fund passes, one half to the brothers and sisters or their representatives of the husband and one half to the brothers and sisters or their represntatives of the wife, under said section.

*Babst & Glosser; Scroggs & Monnett,* attorneys for plaintiffs. *W. L. Geer* and *C. E. Dewald,* attorneys for defendants.